

taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 1 of 52

UNITED STATES TAX COURT RECEIVED 2020 OCT -19 AM10:57
BY: DEPUTY CLERK

ORIGINAL
U.S. TAX COURT
STEPHANIE A. SERVOSS, CLERK
2020 OCT 19 AM 11:07
BY: DEPUTY CLERK

UNITED STATES TAX COURT

| | | |
|---|---|---|
| HANCOCK COUNTY LAND ACQUISTIONS, LLC, SOUTHEASTERN ARGIVE INVESTMENTS, LLC TAX MATTERS PARTNER, | ) | |
| Petitioner, | ) | |
| v. | ) | DOCKET NO: 12385-20 |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| Respondent. | ) | |

**PETITION FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

PETITIONER, SOUTHEASTERN ARGIVE INVESTMENTS, LLC, HEREBY PETITIONS under Section 6626(a) for a readjustment of the partnership items set forth in the notice of final partnership administrative adjustment ("FPAA") dated July 23, 2020, pertaining to the 2016 Form 1065 (U.S. Return of Partnership Income) for Hancock County Land Acquisitions, LLC ("Hancock") for the tax year ending December 31, 2016 ("2016 Form 1065").[1] As the basis for its case, Petitioner alleges as follows:

Address Used By Court

1. Hancock's current address and principal place of business is 210 E. 2nd Avenue, Suite 105, Rome, Georgia 30161.

[1] Unless otherwise indicated, all uses of the term "Section" and "Sections" in this Petition refer to the Internal Revenue Code of 1986, as amended.

Partnership c/o TMP

Exhibit
1

SERVED Oct 21 2020


DOCUMENT SERVICE
Doc 2020-42341
Page: 2 of 52

2. Hancock is a Mississippi limited liability company.

3. Hancock is a partnership for federal tax purposes.

4. Petitioner is the Tax Matters Partner ("TMP") of Hancock with respect to its 2016 Form 1065.

5. Hancock's taxpayer identification number is set forth in the Statement of Taxpayer Identification Number, which is attached to this Petition.

6. Petitioner is filing this Petition within the 90-day period set forth in Section 6226(a) in its capacity as TMP of Hancock.

7. Respondent's office located at 955 S. Springfield Avenue, Springfield, New Jersey 07081 issued the FPAA.

8. A complete copy of the FPAA is attached to this Petition as Exhibit A.

9. Petitioner disputes all proposed adjustments in the FPAA.

10. Respondent made the following errors in the FPAA:

a. Respondent erred in asserting any adjustment for any amount;

b. Respondent erred in asserting an adjustment to "[c]haritable contributions 50 percent" reported on Schedule K, Line 13a in the amount of $180,177,000;

c. Respondent erred in asserting an adjustment to "other deductions" reported on Schedule K, line 1 in the amount of $1,712,242;


DOCUMENT SERVICE
Doc 2020-42341
Page: 3 of 52

d. Respondent erred in asserting an adjustment to "other deductions" reported on Schedule K, line 13d in the amount of $4,416,251;

e. Respondent erred by failing to describe any meaningful factual, tax, or legal basis for disallowing Hancock's "charitable contributions 50 percent" reported on Schedule K, line 13a;

f. Respondent erred by failing to describe any meaningful factual, tax, or legal basis for disallowing Hancock's "other deductions" reported on Schedule K, line 1;

g. Respondent erred by failing to describe any meaningful factual, tax, or legal basis for disallowing Hancock's "other deductions" reported on Schedule K, line 13d;

h. Respondent erred in asserting that Hancock did not establish that it made a non-cash charitable contribution;

i. Respondent erred by asserting, in the alternative, that Hancock did not establish that Hancock's non-cash charitable contribution satisfied all the requirements of Section 170;

j. Respondent erred in asserting that Hancock did not substantiate the "other deductions" reported on Schedule K, line 1 as ordinary and necessary business expenses under Section 162;


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 4 of 52

k. Respondent erred in asserting that Hancock did not substantiate the "other deductions" reported on Schedule K, line 13d as ordinary and necessary business expenses under Section 162;

l. Respondent erred in asserting penalties based, alternatively, on gross valuation misstatement pursuant to Section 6662(h), a reportable transaction understatement pursuant to Section 6662A, negligence or disregard of rules and regulations pursuant to Section 6662(c), substantial understatement of income tax pursuant to Section 6662(d), or substantial valuation misstatement pursuant to Section 6662(e); and

m. Respondent erred in failing to consider the reasonable cause that existed with respect to all positions taken by Hancock on its 2016 Form 1065 and all other defenses to the proposed penalties.

11. Based on information and belief, the facts and mixed points of fact and law upon which Petitioner relies include, but are not limited to, the following:

**General**

a. Hancock was a partnership for federal tax purposes in 2016.

b. Petitioner owned 97 percent of the profit, loss, and capital of Hancock on December 31, 2016.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 5 of 52

c. A resolution to Hancock's Operating Agreement, dated July 27, 2018 ("Resolution"), named Petitioner as its manager, effective June 17, 2016.

d. Petitioner is a U.S. person.

e. Hancock's 2016 Form 1065 properly named Petitioner as TMP.

f. Hancock meets the net worth criteria described in Section 7430(c)(4)(A)(ii).

**Property Background**

g. The property at issue in this case is comprised of approximately 236.12 acres ("Property").

h. The Property is located in Hancock County, Mississippi.

i. The Property is viewable from Highway 607.

j. The Property is near Interstate 59.

k. The Property is viewable from Old Highway 11.

l. On March 12, 2015, Mine Assets Holdings, LLC ("MAH") contributed approximately 1,400 acres of land to Wet Mine Assets Holdings, LLC ("WMAH").

m. The Property was part of the land, described above, that MAH contributed to WMAH.

n. On June 15, 2016, MAH contributed the Property to WMAH.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 6 of 52

o.    On June 15, 2016, WMAH contributed the Property to Hancock as a capital contribution.

p.    The Property is within the Pearl River bottomlands.

q.    The Pearl River bottomlands have sand and gravel resources, including sand used for hydraulic fracturing and gravel used as construction aggregate.

r.    The Property has reserves of sand of the type used by energy companies in the hydraulic fracturing process ("frac sand").

s.    The Property has reserves of construction-grade gravel.

t.    The Property has reserves of construction-grade sand.

u.    In 2016, there was an active frac sand mining operation adjacent to the Property.

v.    In 2016, multiple sand and gravel quarries operated within 10 miles of the Property.

w.    Hancock obtained a report related to the Property titled "Mineral Valuation Report 236 Acre Site" ("First Mineral Assessment").

x.    Action Testing Group, LLC ("ATG") prepared the First Mineral Assessment.

y.    A licensed professional engineer and a senior environmental program manager executed the First Mineral Assessment.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 7 of 52

z. Dungan Engineering, P.A. ("DE") drilled seven exploratory holes on the Property ("DE Holes").

aa. In preparing the First Mineral Assessment, ATG analyzed the samples from the DE Holes.

ab. In preparing the First Mineral Assessment, ATG also analyzed samples from exploratory holes on an adjacent property.

ac. ATG tested the samples from the DE Holes located on the Property using the standards set forth by the American Petroleum Institute ("API").

ad. ATG tested the samples from the DE Holes located on the Property using the standards set forth by the American Society for Testing and Materials ("ASTM") for conducting sieve analyses.

ae. The First Mineral Assessment concluded that the mineral resources on the Property were suitable for frac sand, construction sand, and construction gravel.

af. The First Mineral Assessment determined that the Property contained approximately 25.5 million tons of saleable frac sand.

ag. The First Mineral Assessment determined that the Property contained approximately 15.8 million tons of saleable gravel.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 8 of 52

ah. The First Mineral Assessment determined that the mineral resources on the Property had a net present value of approximately $194 million.

ai. Hancock obtained a report related to the Property titled "Independent Appraisal Minerals Underlying 236-Acre Fee Property" ("Second Mineral Assessment").

aj. John T. Boyd Company ("Boyd Company") prepared the Second Mineral Assessment.

ak. A director of financial analysis specializing in mineral valuation, a mining consultant with degrees in mining engineering and finance, and a licensed professional engineer executed the Second Mineral Assessment.

al. In preparing the Second Mineral Assessment, Boyd Company analyzed the samples from the DE Holes on the Property.

am. In preparing the Second Mineral Assessment, Boyd Company also analyzed exploratory hole samples from an adjacent property.

an. The Second Mineral Assessment concluded that the Property's mineral resources included significant frac sand, construction sand, and construction gravel.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 9 of 52

ao. The Second Mineral Assessment determined that the Property contained approximately 22.1 million tons of saleable frac sand.

ap. The Second Mineral Assessment determined that the Property contained approximately 10.7 million tons of saleable gravel.

aq. The Second Mineral Assessment determined that the Property's mineral resources had a net present value of approximately $169 million.

ar. The Property was zoned A-1 (General Agriculture) in 2016.

as. Mining is permitted as a "special exception" to the A-1 (General Agriculture) zoning category.

at. Mining is permitted as a "conditional use" for properties with zoning designations I-1 (Light Industrial) and I-2 (Heavy Industrial).

**<u>Donation of Conservation Easement</u>**

au. Hancock executed a Deed of Conservation Easement ("Deed") encumbering the Property on August 2, 2016 ("Conservation Easement").

av. The Deed was in favor of the Atlantic Coast Conservancy, Inc. ("ACC").

aw. The Conservation Easement covered the entire Property.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 10 of 52

ax. ACC was a "qualified organization" for purposes of Section 170 and the underlying regulations as of August 2, 2016.

ay. ACC was an "eligible donee" for purposes of Section 170 and the underlying regulations as of August 2, 2016.

az. The Conservation Easement constituted a "qualified real property interest" for purposes of Section 170 and the underlying regulations.

ba. The Property was not encumbered by a mortgage as of August 2, 2016.

bb. Hancock did not grant the Conservation Easement to ACC in a bargain sale.

bc. Hancock did not receive any consideration from ACC in exchange for donating the Conservation Easement to ACC.

bd. Hancock did not receive any consideration from a third party in exchange for donating the Conservation Easement to ACC.

**<u>Deed of Conservation Easement</u>**

be. The Deed was recorded with the Chancery Clerk of Hancock County in Hancock County, Mississippi on August 3, 2016.

bf. The Deed identifies various conservation purposes.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 11 of 52

bg.  The Deed indicates that the Conservation Easement will protect a relatively natural habitat of fish, wildlife, plants, or similar ecosystems.

bh.  The Deed indicates that the Conservation Easement preserves open space (including farmland and forestland) where such preservation is pursuant to a clearly delineated federal, state, or local governmental policy, and will yield a significant public benefit.

bi.  The Deed protects the Property as a relatively natural habitat of fish, wildlife, plants, or similar ecosystem, which qualifies as a conservation purpose as defined by Section 170(h)(4)(A)(ii).

bj.  The Deed protects the Property as an open space (including farmland and forestland), where such preservation is pursuant to a clearly delineated federal, state, or local governmental policy, and will yield a significant public benefit, which qualifies as a conservation purpose as defined by Section 170(h)(4)(A)(iii)(II).

bk.  The Deed describes the purposes of the Conservation Easement as protecting the conservation values of the Property in perpetuity, ensuring that the Property will remain forever predominantly in its natural condition, and preventing any use


Doc 2020-42341
Page: 12 of 52

of the Property that will impair or interfere with the conservation values of the Property.

bl. The Deed identifies the conservation values of the Property.

bm. The Baseline Report identifies the conservation values of the Property.

bn. The Deed granted ACC the right to preserve and protect the conservation values of the Property in perpetuity.

bo. The Deed imposed on ACC the duty to preserve and protect the conservation values of the Property in perpetuity.

bp. The Deed granted ACC the right to enter the Property at reasonable times, to inspect the Property, to monitor compliance with the Deed, and to enforce the purposes of the Conservation Easement.

bq. The Deed prohibits Hancock and all future owners of the Property from the extraction of minerals, oil, gas, or other hydrocarbons, soils, sands, gravel, rock, and other materials on or below the surface of the Property.

br. The Deed prohibits Hancock and all future owners of the Property from constructing improvements on the Property outside of specific areas defined by reference to the Baseline Report.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 13 of 52

bs.   The restrictions on the use of the Property stated in the Deed are binding on Hancock and all future owners of the Property in perpetuity.

bt.   The Deed granted ACC an immediately vested right to a proportionate share of any proceeds that may result from a sale, exchange, or involuntary conversion of the Property, if the Conservation Easement is extinguished in future legal proceedings.

bu.   The Deed provides a formula for calculating ACC's proportionate share of extinguishment proceeds that complies with the requirements of Treas. Reg. § 1.170A-14(g)(6)(ii).

### Baseline Documentation Report

bv.   A professional biologist prepared the Baseline Report.

bw.   The Baseline Report was completed before Hancock donated the Conservation Easement.

bx.   The Baseline Report documented the conservation values on the Property at the time of the donation of the Conservation Easement.

by.   The Baseline Report documented the physical condition of the Property at the time of the donation of the Conservation Easement.

13


taxnotes DOCUMENT SERVICE
Doc 2020-42341
Page: 14 of 52

bz. The Baseline Report concluded that the Property possessed significant wildlife, forest, agricultural, scenic vistas, open space, and plant habitat features.

ca. The Baseline Report concluded that the Property was composed of pine flatwoods forest adjacent to a mature bald cypress swamp forest on floodplains and low terraces, and contains first and second-order freshwater streams.

cb. The Baseline Report contains numerous maps covering the Property, including U.S. Geological Survey topographic maps and aerial photographs.

cc. The Baseline Report contains photographs taken at various locations on the Property.

**Qualified Appraiser**

cd. A licensed and certified real estate appraiser in the state of Mississippi ("Appraiser") prepared the "Conservation Easement; Appraisal of Market Value Before Conveyance of a Conservation Easement; Market Value After the Conveyance; Market Value of Easement Gift; 236.12+/- Acres in Picayune, Hancock County, Mississippi" ("Easement Appraisal").

ce. Appraiser performed appraisals on a regular basis.

taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 15 of 52

cf.   Appraiser had local knowledge and experience in preparing appraisals related to conservation easements.

cg.   Appraiser was not a direct partner of Hancock.

ch.   Appraiser was not an indirect partner of Hancock.

ci.   Appraiser did not claim, report, or otherwise take a deduction under Section 170 or any other tax provision for the donation of the Conservation Easement.

cj.   Appraiser was not a party to the transaction in which Hancock acquired the Property.

ck.   Appraiser was not an agent of a party to the transaction in which Hancock acquired the Property.

cl.   Appraiser was not the donee of the Conservation Easement.

cm.   Appraiser was not an employee of (i) Hancock, (ii) a direct partner of Hancock, (iii) an indirect partner of Hancock, (iv) a party to the transaction in which Hancock acquired the Property, (v) ACC, or (vi) Petitioner.

cn.   Appraiser was not "related" under Section 267(b) to any of the persons described immediately above.

co.   Appraiser performed a majority of his appraisals in 2016 for parties other than Hancock.


DOCUMENT SERVICE
Doc 2020-42341
Page: 16 of 52

cp. Appraiser was a "qualified appraiser," as that term is defined under Section 170 and the underlying regulations.

cq. The Tax Court has previously recognized Appraiser as a valuation expert.

**Qualified Appraisal**

cr. The Easement Appraisal was dated August 10, 2016.

cs. The Easement Appraisal was not dated more than 60 days before the date on which Hancock donated the Conservation Easement.

ct. The Easement Appraisal was dated before the extended deadline for filing the 2016 Form 1065 on which the charitable contribution deduction was claimed.

cu. The Easement Appraisal was signed and dated by the Appraiser.

cv. The Easement Appraisal contains a detailed legal description of the Property.

cw. The Easement Appraisal contains a description of the Conservation Easement.

cx. The Easement Appraisal contains a description of the physical condition of the Property.


DOCUMENT SERVICE
Doc 2020-42341
Page: 17 of 52

cy. The Easement Appraisal states the date of the donation of the Conservation Easement to ACC.

cz. The Easement Appraisal contains the name, address, appraiser certification license number, and partial social security number of the Appraiser.

da. The Easement Appraisal contains the name, address, and taxpayer identification number of the appraisal company.

db. The Easement Appraisal contains a list of the qualifications of the Appraiser, including his background, experience, education, and membership in professional appraisal associations.

dc. The Easement Appraisal contains a statement that it was being prepared for income tax purposes.

dd. The Easement Appraisal provides the basis for the conclusions by the Appraiser regarding the fair market value ("FMV") of the Conservation Easement.

de. The Easement Appraisal states that the FMV of the Property was based on market conditions as of July 18, 2016.

df. The Easement Appraisal concludes that the FMV of the Property, before the donation of the Conservation Easement, was $180,354,000.


DOCUMENT SERVICE
Doc 2020-42341
Page: 18 of 52

dg. The Easement Appraisal concludes that the FMV of the Property, after the donation of the Conservation Easement, was $177,000.

dh. The Easement Appraisal concludes that the FMV of the Conservation Easement was $180,177,000.

di. The Easement Appraisal concludes that the Conservation Easement did not enhance the value of any other property owned by Hancock.

dj. The Easement Appraisal concludes that the FMV of the Conservation Easement, taking into account the enhancement or lack of enhancement to other property owned by Hancock was $180,177,000.

dk. The Easement Appraisal concludes that the highest and best use ("HBU") of the Property, before the donation of the Conservation Easement, was the mining of frac sand, construction sand, and construction gravel ("Before-Donation-HBU").

dl. The Easement Appraisal concludes that the Before-Donation-HBU was legally permissible at the time of the donation.

dm. The Easement Appraisal concludes that the Before-Donation-HBU was physically possible at the time of the donation.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 19 of 52

dn. The Easement Appraisal concludes that the Before-Donation-HBU was financially feasible at the time of the donation.

do. The Easement Appraisal concludes that the Before-Donation-HBU was maximally productive at the time of the donation.

dp. In determining the value of the surface Property before the donation of the Conservation Easement, Appraiser used the sales comparison and the income capitalization approaches.

dq. The Appraiser determined that using a sales comparison approach was not appropriate for valuing the Property's mineral reserves.

dr. In determining the value of the Property's mineral reserves before the donation of the Conservation Easement, Appraiser used the income capitalization approach.

ds. In determining the FMV of the Property's mineral reserves before the donation of the Conservation Easement under the income method, Appraiser utilized a discounted cash flow ("DCF") analysis.

dt. Respondent has advocated the use of the DCF method for valuing mineral properties in previous litigation before the Tax Court.



taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 20 of 52

du. The DCF analysis has been recognized as appropriate under the Uniform Appraisal Standards for Federal Land Acquisitions ("UASFLA") in situations where mineral interests are being acquired.

dv. The Easement Appraisal concludes that the HBU of the Property, after the donation of the Conservation Easement, was agricultural, forestry, and recreational use ("After-Donation-HBU").

dw. The Easement Appraisal concludes that the After-Donation-HBU is legally permissible after the donation.

dx. The Easement Appraisal concludes that the After-Donation-HBU is physically possible after the donation.

dy. The Easement Appraisal concludes that the After-Donation-HBU is financially feasible after the donation.

dz. The Easement Appraisal concludes that the After-Donation-HBU is maximally productive after the donation.

ea. In determining the value of the Property after the donation of the Conservation Easement, Appraiser used the sales comparison approach.

eb. In determining the FMV of the Property after the donation of the Conservation Easement under the sales comparison


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 21 of 52

approach, Appraiser analyzed 17 sales of comparable properties encumbered by conservation easements.

ec. The appraisal fee charged by Appraiser for the preparation of the Easement Appraisal was not based on a percentage of the appraised value of the Conservation Easement.

ed. The appraisal fee charged by Appraiser for the preparation of the Easement Appraisal was not based on a percentage of the amount allowable as a charitable contribution deduction under Section 170.

ee. The Easement Appraisal was a "qualified appraisal," as that term is defined in Section 170 and the underlying regulations.

**Contemporaneous Written Acknowledgements**

ef. ACC issued a letter to Hancock on August 2, 2016, acknowledging receipt of the donation of the Conservation Easement ("Donation Acknowledgment Letter").

eg. ACC issued a letter to Hancock on December 2, 2016, acknowledging receipt of stewardship funds of $50,500 ("Stewardship Acknowledgment Letter").

eh. The Donation Acknowledgment Letter confirms that ACC did not provide any goods or services in exchange for the donation of the Conservation Easement.



DOCUMENT SERVICE
Doc 2020-42341
Page: 22 of 52

ei. The Stewardship Acknowledgment Letter confirms that ACC did not provide any goods or services in exchange for the donation of the stewardship funds of $50,500.

ej. The Donation Acknowledgment Letter was a "contemporaneous written acknowledgement" for purposes of Section 170 and the underlying regulations.

ek. The Stewardship Acknowledgment Letter was a "contemporaneous written acknowledgement" for purposes of Section 170 and the underlying regulations.

**Tax Filings**

el. Hancock timely filed a 2016 Form 1065.

em. The 2016 Form 1065, Schedule K, line 13a reports, among other items, total charitable contributions of $180,227,500.

en. Statement 1 to the 2016 Form 1065 indicates that the total charitable contribution deduction of $180,227,500 was comprised of (i) a non-cash donation of $180,177,000 (*i.e.*, the Conservation Easement donated to ACC) and (ii) cash contributions of $50,500 (*i.e.*, stewardship funds to ACC).

eo. The 2016 Form 1065, Schedule K, line 1 reports, among other items, other deductions of $1,712,242.

  

DOCUMENT SERVICE
Doc 2020-42341
Page: 23 of 52

ep. Statement 1 to the 2016 Form 1065 indicates that the total other deductions of $1,712,242 were comprised of (i) bank charges of $415, (ii) insurance premiums of $1,709,856, (iii) office expenses of $111, (iv) postage expenses of $250, and (v) registration expenses of $1,650.

eq. The 2016 Form 1065, Schedule K, line 13d reports, among other items, other deductions of $4,416,251.

er. Statement 1 to the 2016 Form 1065, Schedule K, line 13d indicates that the total other deductions of $4,416,251 was comprised of (i) appraisal fees of $38,698, (ii) legal and professional fees of $1,877,553, and (iii) management fees of $2,500,000.

es. Hancock attached Form 8283 (Noncash Charitable Contributions), the Easement Appraisal, and the Deed to its timely 2016 Form 1065.

**<u>Form 8283 and Attachment</u>**

et. Hancock attached to its Form 8283 a document titled "Supporting Documentation for Form 8283" ("Supporting Documentation").


DOCUMENT SERVICE
Doc 2020-42341
Page: 24 of 52

eu. Form 8283 and the Supporting Documentation contain all the information required by Treas. Reg. § 1.170A-13(c)(4) with respect to the donation of the Conservation Easement.

ev. Form 8283 indicates that Hancock made a qualified conservation contribution with a value of $180,177,000 to ACC.

ew. Form 8283 reports the adjusted basis of Hancock in the Property.

ex. Form 8283 reports the manner by which Hancock obtained the Property.

ey. Form 8283 reports the date on which Hancock obtained the Property.

ez. ACC signed and dated Form 8283.

fa. Appraiser signed and dated Form 8283.

fb. Form 8283 contains the name and taxpayer identification number of Hancock.

fc. Form 8283 contains the name, address, and taxpayer identification number of ACC.

fd. Form 8283 identifies the date on which ACC received the Conservation Easement.

fe. Form 8283 contains the name of Appraiser.


DOCUMENT SERVICE
Doc 2020-42341
Page: 25 of 52

ff. Form 8283 contains the address and tax identification number of the appraisal company.

fg. Form 8283 contains a certification by Appraiser stating that (i) he performed appraisals on a regular basis, (ii) he was qualified to make appraisals of the type of property being valued, (iii) the fee charged for the appraisal was not based on a percentage of the appraised property value, (iv) he was not one of the persons described in Treas. Reg. § 1.170A-13(c)(5)(iv), (v) he understood that an intentionally false or fraudulent overstatement of the value of the property may subject him to a civil penalty under Section 6701, and (vi) he was not barred from presenting evidence or testimony by the Office of Professional Responsibility.

fh. The statements by Appraiser in Form 8283 described immediately above were accurate.

fi. The Supporting Documentation attached to Form 8283 contains a detailed legal description of the Property, through incorporation of the Baseline Report and Easement Appraisal.

fj. The Supporting Documentation attached to Form 8283 contains a summary of the physical condition of the Property at the time


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 26 of 52

of the donation, through incorporation of the Baseline Report and Easement Appraisal.

fk. Form 8283 contains a description of the manner and date on which Hancock obtained the Property, through the incorporation of the Supporting Documentation, Baseline Report, and Easement Appraisal.

**History of the Tax Dispute**

fl. Respondent sent an audit-selection letter to Hancock dated July 17, 2018.

fm. Respondent issued a Notice of Beginning of Administrative Proceedings ("NBAP"), dated September 11, 2016, with respect to the 2016 Form 1065.

fn. Hancock maintained all records required with respect to the 2016 Form 1065.

fo. Hancock and its representatives cooperated with Respondent during the audit.

fp. Hancock and its representatives cooperated with all requests by Respondent for information, documents, meetings, site visits, and interviews during the audit.

fq. Respondent issued at least 22 Information Document Requests ("IDRs"), plus supplemental IDRs, during the audit.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 27 of 52

fr. Hancock and its representatives timely responded to each IDR.

fs. Respondent never issued a Summons to Hancock during the audit.

ft. Respondent never issued a Formal Document Request to Hancock during the audit.

fu. Representatives of Hancock provided a tour of the Property to Respondent during the audit.

**Contents of FPAA**

fv. Hancock properly reported a cash charitable contribution of $50,500 on its 2016 Form 1065.

fw. The FPAA allows a cash charitable contribution of $50,500.

fx. The FPAA asserts an adjustment for "charitable contributions – 50 percent" (i.e., the donation of the Conservation Easement) of $180,177,000.

fy. The FPAA describes the basis for asserting the $180,177,000 adjustment to charitable contributions as follows: "You have not established that that [Hancock] made a noncash charitable contribution during the tax year ended December 31, 2016.

fz. The FPAA also describes the basis for asserting the $180,177,000 adjustment to charitable contributions as follows: "To the extent that you are able to establish that a noncash


DOCUMENT SERVICE
Doc 2020-42341
Page: 28 of 52

charitable contribution has been made, you failed to establish that it satisfied all the requirements of I.R.C. § 170 and the corresponding Treasury Regulations for deducting a noncash charitable contribution."

ga. The FPAA asserts an adjustment for "other deductions" of $1,712,242.

gb. The FPAA describes the sole basis for asserting the $1,712,242 adjustment as follows: "You have not substantiated the $1,712,242 deduction claimed by [Hancock] for Other Expenses as ordinary and necessary in the conduct of a trade or business as required under I.R.C. §162."

gc. The FPAA asserts an adjustment for "other deductions" of $4,416,251.

gd. The FPAA describes the sole basis for asserting the $4,416,251 adjustment as follows: "You have not substantiated the $4,416,251 deduction claimed by [Hancock] for Other Expenses as ordinary and necessary in the conduct of a trade or business as required under I.R.C. §162."

ge. The FPAA describes no specific facts, legal theories, tax theories, or analysis for asserting the adjustments to the 2016 Form 1065.



DOCUMENT SERVICE
Doc 2020-42341
Page: 29 of 52

gf. The FPAA describes no specific facts, legal theories, tax theories, or analysis for possible defenses and/or exceptions to penalties asserted.

gg. After conducting an examination lasting over two years, having meetings with Hancock's representatives, issuing and receiving responses to at least 22 IDRs, and conducting a site visit of the Property in which multiple agents of Respondent participated, the Form 886-A (Explanation of Items) attached to the FPAA consists of just one page.

gh. The FPAA does not describe as a basis for adjustment that the Conservation Easement placed on the Property does not constitute a "qualified real property interest" for purposes of Section 170.

gi. The FPAA does not describe as a basis for adjustment that ACC was not a "qualified organization" for purposes of Section 170.

gj. The FPAA does not describe as a basis for adjustment that ACC was not an "eligible donee" for purposes of Section 170.

gk. The FPAA does not describe as a basis for adjustment that the Conservation Easement fails to meet any one of the "conservation purpose" requirements of Section 170(h)(4)(A).


DOCUMENT SERVICE
Doc 2020-42341
Page: 30 of 52

gl.  The FPAA does not describe as a basis for adjustment that the restrictions found in the Deed are not enforceable and binding on current and future owners of the Property in perpetuity.

gm.  The FPAA does not describe as a basis for adjustment that the conservation purposes of the Conservation Easement are not protected in perpetuity.

gn.  The FPAA does not describe as a basis for adjustment that the Baseline Report fails to adequately document the physical condition of the Property at the time of the donation of the Conservation Easement.

go.  The FPAA does not describe as a basis for adjustment that the Easement Appraisal was not a "qualified appraisal."

gp.  The FPAA does not describe as a basis for adjustment that Appraiser was not a "qualified appraiser" with respect to the donation of the Conservation Easement.

gq.  The FPAA does not describe as a basis for adjustment that Appraiser failed to use acceptable appraisal standards and methods in preparing the Easement Appraisal.

gr.  The FPAA does not describe as a basis for adjustment that the Form 8283 and the Supporting Documentation attached to the 2016 Form 1065 were late, incomplete, or inaccurate.


DOCUMENT SERVICE
Doc 2020-42341
Page: 31 of 52

gs. The FPAA does not propose any adjustment to the basis in the Property reported by Hancock in the 2016 Form 1065.

gt. The FPAA does not propose to change any method of accounting utilized by Hancock and reflected in the 2016 Form 1065.

gu. The penalties alleged in the FPAA do not meet the requirements of Section 6751(b).

**Lack of Diligence in Issuing FPAA**

gv. Respondent never hired an outside, independent geologist or similar professional to determine the potential for mining the Property during the audit.

gw. Respondent never hired an outside, independent engineer or similar professional to conduct a geotechnical exploration of the Property during the audit.

gx. Respondent never hired an outside, independent mining expert to determine the extent of the mineral reserves underlying the Property during the audit.

gy. Respondent never hired an outside, independent appraiser to determine the FMV of the Conservation Easement donation during the audit.


DOCUMENT SERVICE
Doc 2020-42341
Page: 32 of 52

gz.     Respondent never hired an outside, independent biologist,
        forester, environmental scientist, zoologist, hydrologist, or
        other type of conservation expert to determine whether the
        Conservation Easement donation satisfied the "conservation
        purpose" requirements of Section 170(h)(4)(A).

ha.     Respondent solely relied on its own employees ("IRS
        Appraisers") to appraise the Property.

hb.     The IRS Appraisers were not licensed in Mississippi.

hc.     Respondent solely relied on its own employee ("IRS Engineer")
        to determine the FMV of the mineral reserves on the Property.

hd.     The IRS Engineer was not a licensed Professional Engineer in
        2019.

he.     Respondent solely relied on its own employees to determine the
        FMV of the Conservation Easement donation.

hf.     Respondent did not rely on any party, other than the IRS
        Appraisers, to make any determination regarding whether the
        Easement Appraisal was a qualified appraisal.

hg.     Respondent solely relied on his own employees to determine all
        proposed adjustments in the FPAA.

hh.     Respondent ignored the determination by the IRS Appraisers of
        the FMV of the Property in issuing the FPAA.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 33 of 52

## Compliance Efforts

hi. Hancock fully complied with Section 170 and the underlying regulations with respect to the donation of the Conservation Easement.

hj. Hancock substantially complied with Section 170 and the underlying regulations with respect to the donation of the Conservation Easement.

hk. Hancock properly deducted ordinary and necessary business expenses on its 2016 Form 1065.

hl. In claiming the charitable deduction related to the Conservation Easement donation on its 2016 Form 1065, Hancock relied on the First Mineral Assessment, Second Mineral Assessment, Survey, Baseline Report, Easement Appraisal, and Deed.

hm. Hancock reasonably relied on the First Mineral Assessment, Second Mineral Assessment, Survey, Baseline Report, Easement Appraisal, and Deed.

hn. Hancock reasonably relied on the qualified, independent, informed professionals who prepared the First Mineral Assessment, Second Mineral Assessment, Survey, Baseline Report, Easement Appraisal, and Deed.



DOCUMENT SERVICE
Doc 2020-42341
Page: 34 of 52

12.    The content of FPAA, particularly the unsupported allegation that the charitable contribution deduction should be $0, is erroneous, unfair, unreasonable, arbitrary, and capricious.

13.    Respondent bears the burden of proof as to all matters.

WHEREFORE, Petitioner requests that the Tax Court:

(i)    Determine that the 2016 Form 1065 is accurate as filed;

(ii)    Determine that there are no adjustments, penalties, additions to tax, or other amounts with respect to the 2016 Form 1065;

(iii)    If warranted by the evidence at trial, determine that Hancock undervalued the Conservation Easement and increase the amount of the non-cash charitable donation deduction for 2016 accordingly;

(iv)    Determine that Respondent has the burden of proof on all issues; and

(v)    Grant such other and further relief that it deems appropriate.

taxnotes DOCUMENT SERVICE
Doc 2020-42341
Page: 35 of 52

Respectfully submitted,

Date: 10/16/2020 ADMITTED

HALE E. SHEPPARD
Tax Court Bar No. SH0819

Date: 10/16/2020 ADMITTED

JEFFREY S. LUECHTEFELD
Tax Court Bar No. LJ1040

Date: 10/16/2020 ADMITTED

JOHN W. HACKNEY
Tax Court Bar No. HJ1581

Date: 10/16/2020 ADMITTED

CASSANDRA S. BRADFORD
Tax Court Bar No. BC0747

Chamberlain, Hrdlicka, White,
Williams & Aughtry
191 Peachtree Street, N.E.
Forty-Sixth Floor
Atlanta, Georgia 30303
(404) 659-1410
(404) 659-1852 Facsimile

COUNSEL FOR PETITIONER



taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 36 of 52

Certified Mail # 7013 0600 0000 9437 3650

Department of the Treasury
Internal Revenue Service
Small Business and Self-Employed
IRS 955 S SPRINGFIELD AVENUE
SPRINGFIELD, NJ 07081

Date: JUL 23 2020

Person to contact:
Dennis J Serwick
1000209351
973-921-4196
Mon - Fri, 8:00 am - 4:30

Partnership ID number:
[redacted]

Tax year ended:
201612

SOUTHEASTERN ARGIVE INVESTMENTS LLC
TAX MATTERS PARTNER OF
HANCOCK COUNTY LAND ACQUISITIONS LLC
210 E 2ND AVE STE 105
ROME GA 30161-1712 305

## TMP Notice Of Final Partnership Administrative Adjustment

Dear Tax Matters Partner:

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year listed above, and to each partner who is entitled to receive this letter.

We determined that adjustments are necessary to certain partnership items for the partnership and tax year liste above. You are receiving this letter because you were identified as the Tax Matters Partner (TMP) for this tax year. Because we made adjustments to these items on the partnership return, these adjustments will flow to the partners' returns as well. The enclosed schedule of adjustments outlines the changes. We will provide a similar letter to those partners entitled to receive it.

The adjustments to the partnership items on the partnership return may include partnership level determination on penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, contains the adjustments to the partnership return.

**What you need to do**

**If you agree with the adjustments and want to bind the non-notice partners**

As the TMP, you can enter into an agreement that binds yourself and non-notice partners to the treatment of th partnership items as shown on the enclosed schedule of adjustments. We will also send you a separate letter as partner (if you are entitled to one), which you can sign if you only want to agree to your share of the adjustments and not bind the non-notice partners. For this purpose, a non-notice partner is a direct partner with less than a one percent interest in a partnership having more than 100 direct partners. You must add the following statement above the signature blocks on the Form 870-PT:

*The undersigned tax matters partner is signing this offer on behalf of himself (herself or itself) and all other partners whom he (she or it) has the authority to bind; a final agreement resulting from the co-signature of th Commissioner of Internal Revenue will be binding on all such other partners.*


DOCUMENT SERVICE
Doc 2020-42341
Page: 37 of 52

If you want to bind yourself and the non-notice partners to the partnership item adjustments, add the language above and sign and return the enclosed Form 870-PT within 150 days of the date of this letter.

We will send you a separate letter as a partner (if you are entitled to one), which you can sign if you only want to agree to your share of the adjustments and not bind the non-notice partners.

When you sign Form 870-PT to bind the non-notice partners, you are:

- Agreeing to the partnership item adjustments
- Agreeing that the non-notice partners are subject to any partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items
- Agreeing that the non-notice partners are subject to additional tax and interest resulting from their share of the adjustments to the partnership return
- Waiving the rights of the non-notice partners to participate in any administrative or judicial proceedings affecting the adjustment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts for the tax year in question.

This agreement is binding only if you sign and return Form 870-PT, and we sign on behalf of the Commissioner of the Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code Section 6229(f).

Within one year of that agreement date, all impacted non-notice partners will receive a final report as to what adjustments we made to their individual, partnership, or corporate returns with a total due or refund amount, including penalties and interest (if applicable).

Once both parties sign the agreement, non-notice partners can't file a claim to:

- Change the items in question
- Claim a refund or credit based on a readjustment

However, they can file a claim to raise:

- Math errors
- Partner level defenses to partnership level determinations of penalties

**If you don't agree with the adjustments**

As the partnership TMP, if you want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner can file a petition for judicial review.

You can file your petition for readjustment of partnership items with one of the following courts:

- United States Tax Court
- United States Court of Federal Claims
- District Court of the United States, in the district of the partnership's principal place of business



DOCUMENT SERVICE
Doc 2020-42341
Page: 38 of 52

A petition the TMP files in the first 90 days precludes all other actions and covers all partners still in the proceeding. If the TMP doesn't file a petition by the 90th day from the date we mailed the FPAA, any partner entitled to receive this letter, or any 5 percent group, can petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. Five percent groups must file the petition after the 90th day, but on or before the 150th day from the date we mailed the FPAA to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed. All partners still subject to the partnership proceeding will be parties to the petition that is not dismissed. Petitions filed with the United States Tax Court must be mailed to:

United States Tax Court
400 Second Street, NW
Washington, DC 20217

When you mail the petition, you must attach a copy of this letter to the petition. The timeframe for filing a petition with the court is fixed by law, and the court can't consider your case if your petition is late.

**If you do nothing**
If neither you, as the TMP, nor any partner file a petition for readjustment in any of the courts listed in this letter, the FPAA becomes final, and we will bill all partners for any additional tax plus interest they may owe under the FPAA. Once final, the treatment of the partnership items of the partnership under the FPAA can't be contested in any refund claim or suit.

You may want to contact a tax advisor to discuss this matter.

If you have questions, you can contact the person listed at the top of this letter. If you write, enclose a copy of this letter and include your telephone number and the most convenient time for us to call if we need additional information.

Thank you for your cooperation.

Sincerely,

*Sheila B. Korth*

Sheila B. Korth
Program Manager, SAA-Technical Services, Legacy

Enclosures:
Schedule of Adjustments
Form 870-PT

cc: Hale E. Sheppard


Doc 2020-42341
Page: 39 of 52

| Form 870-PT (Rev. 4-2012) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and zip code: SOUTHEASTERN ARGIVE INVESTMENTS LLC TAX MATTERS PARTNER OF HANCOCK COUNTY LAND ACQUISITIONS LLC 210 E 2ND AVE STE 105 ROME GA 30161-1712 305 | Name of Partnership: HANCOCK COUNTY LAND ACQUISITIONS<br>EIN: [redacted]<br>Name of Tax Matters Partner: SOUTHEASTERN ARGIVE INVESTMENTS LLC | Tax Year(s) Ended: 201612 |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |


DOCUMENT SERVICE
Doc 2020-42341
Page: 40 of 52

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust. If the trustee is signing this agreement on behalf of the trust and all beneficiaries, a Form 56 must be signed by the trustee. If an individual beneficiary is signing the agreement to bind themselves to the agreement, no Form 56 is needed.

6. If the partner is an LLC, the agreement should be signed by the manager of the LLC or other authority as authorized by State law. The signature line should show: [Name of LLC], by [Name of Manager], Followed by the title [Manager].

7. For a partner who is a subsidiary corporation in a consolidated group:

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a).

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

8. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

9. If the Tax Matters Partner signs this offer, please include the title with the signature.

10. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

    - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

    - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.


taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 41 of 52

Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Hancock County Land AcquisitionsLLC | | | |
| | 12/31/2016 | | |
| EIN: ▓▓▓▓▓ | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME: | | | |
| a.  Other deductions | 1,712,242.00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | 1,712,242.00 | | |
| OTHER ADJUSTMENTS | | | |
| A.  Charitable contributions 50 percent | | | |
| (1) ADJUSTMENT | 180,177,000.00 | | |
| (2) AS REPORTED | 180,177,000.00 | | |
| (3) CORRECTED | 0.00 | | |
| B.  Other deductions | | | |
| (1) ADJUSTMENT | 4,416,251.00 | | |
| (2) AS REPORTED | 4,416,251.00 | | |
| (3) CORRECTED | 0.00 | | |

REMARKS:This form only reflects Schedule K items adjusted by this report.
Penalties under IRC §6662 apply as a partnership level determination. Since accuracy penalties cannot be stacked, the following order applies:

1.   Gross Valuation Misstatement 40% IRC 6662(h) or alternatively IRC 6662(e) Substantial Valuation Misstatement 20%
2.   Reportable Transaction Penalty 20% IRC 6662A
3.   Substantial Understatement of Income Tax 20% IRC 6662(b)(2)
4.   Negligence and Disregard of Rules and Regulations 20% IRC 6662(b)(1)

Doc 2020-42341
Page: 42 of 52

## Form 870-PT, Other Adjustments (Continued)

| NAME OF PARTNERSHIP: Hancock County Land AcquisitionsLLC EIN: [redacted] | TAX YEAR(S) ENDED 12/31/2016 | | |
|---|---|---|---|
| C. Appraisal fees: Sch k1 13 W; Details of Sch K line 13d | | | |
| (1) ADJUSTMENT | 38,698.00 | | |
| (2) AS REPORTED | 38,698.00 | | |
| (3) CORRECTED | 0.00 | | |
| D. Legal & preofessional fees: Sch k1 13 W: Details of Sch K line 13d | | | |
| (1) ADJUSTMENT | 1,877,553.00 | | |
| (2) AS REPORTED | 1,877,553.00 | | |
| (3) CORRECTED | 0.00 | | |
| E. Management fees: Sch k1 13 W: Details of Sch K line 13d | | | |
| (1) ADJUSTMENT | 2,500,000.00 | | |
| (2) AS REPORTED | 2,500,000.00 | | |
| (3) CORRECTED | 0.00 | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |


DOCUMENT SERVICE
Doc 2020-42341
Page: 43 of 52

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer HANCOCK COUNTY LAND ACQUISITIONS | | Tax Identification Number [redacted] | Year/Period ended 201612 |

You have not established that HANCOCK COUNTY LAND ACQUISITIONS LLC made a noncash charitable contribution during the tax year ended December 31, 2016. To the extent you are able to establish that a noncash charitable contribution has been made, you failed to establish that it satisfied all the requirements of I.R.C. § 170 and the corresponding Treasury Regulations for deducting a noncash charitable contribution. Accordingly, the charitable contribution claimed on HANCOCK COUNTY LAND ACQUISITIONS LLC Return of Partnership Income (Form 1065) is reduced by $180,177,000 for the tax year ended December 31, 2016.

It is determined that the underpayments of tax resulting from the adjustment of partnership items of $180,177,000 are attributable to a gross valuation misstatement. It is therefore determined that a 40% penalty shall be imposed on the underpayments of tax resulting from the gross valuation misstatement as provided by I.R.C. § 6662(h).

Other Deductions, Tax Return Page 1, Ln 20
You have not substantiated the $1,712,242 deduction claimed by HANCOCK COUNTY LAND ACQUISITIONS LLC for Other Expenses as ordinary and necessary in the conduct of a trade or business as required under I.R.C. §162. Therefore, the $1,712,242 deduction is disallowed.

Other Deductions, Tax Return Schedule K, Ln 13(d)
You have not substantiated the $4,416,251 deduction claimed by HANCOCK COUNTY LAND ACQUISITIONS LLC for Other Expenses as ordinary and necessary in the conduct of a trade or business as required under I.R.C. §162. Therefore, the $4,416,251 deduction is disallowed.

It is further determined that the adjustments to partnership items are attributable to a listed transaction under I.R.C. § 6707A(c), specifically a transaction described in Notice 2017-10. These adjustments result in a reportable transaction understatement. If the I.R.C. § 6662(h) penalty is found not to apply to any portion of the understatement, then a 20% penalty under I.R.C. § 6662A applies to that amount.

It is further determined that any underpayments of tax from the adjustments of partnership items are attributable to (1) negligence or disregard of rules or regulations, (2) substantial understatements of income tax, and (3) substantial valuation misstatements. Therefore, if the I.R.C. § 6662(h) penalty and I.R.C. § 6662A penalty are found not to apply to any portion of the misstatement or understatement, there shall be imposed in the alternative a 20% penalty on the underpayments of tax as a result of I.R.C. § 6662(c), (d), and (e).


DOCUMENT SERVICE
Doc 2020-42341
Page: 44 of 52

Certified Mail # 7013 0600 0000 9437 3643

Department of the Treasury
Internal Revenue Service
Small Business and Self-Employed
955 S SPRINGFIELD AVENUE
SPRINGFIELD, NJ 07081

Date: JUL 23 2020

Person to contact:
Dennis J Serwick
1000209351
973-921-4196
Mon - Fri, 8:00 am - 4:30

Partnership ID number:
[redacted]

Tax year ended:
201612

TAX MATTERS PARTNER OF
HANCOCK COUNTY LAND ACQUISITIONS LLC
210 E 2ND AVE STE 105
ROME GA 30161-1712 305

**TMP Notice Of Final Partnership Administrative Adjustment**

Dear Tax Matters Partner:

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year listed above, and to each partner who is entitled to receive this letter.

We determined that adjustments are necessary to certain partnership items for the partnership and tax year listed above. You are receiving this letter because you were identified as the Tax Matters Partner (TMP) for this tax year. Because we made adjustments to these items on the partnership return, these adjustments will flow to the partners' returns as well. The enclosed schedule of adjustments outlines the changes. We will provide a similar letter to those partners entitled to receive it.

The adjustments to the partnership items on the partnership return may include partnership level determinations on penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, contains the adjustments to the partnership return.

**What you need to do**

**If you agree with the adjustments and want to bind the non-notice partners**

As the TMP, you can enter into an agreement that binds yourself and non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. We will also send you a separate letter as partner (if you are entitled to one), which you can sign if you only want to agree to your share of the adjustments and not bind the non-notice partners. For this purpose, a non-notice partner is a direct partner with less than a one percent interest in a partnership having more than 100 direct partners. You must add the following statement above the signature blocks on the Form 870-PT:

*The undersigned tax matters partner is signing this offer on behalf of himself (herself or itself) and all other partners whom he (she or it) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners.*


DOCUMENT SERVICE
Doc 2020-42341
Page: 45 of 52

If you want to bind yourself and the non-notice partners to the partnership item adjustments, add the language above and sign and return the enclosed Form 870-PT within 150 days of the date of this letter.

We will send you a separate letter as a partner (if you are entitled to one), which you can sign if you only want to agree to your share of the adjustments and not bind the non-notice partners.

When you sign Form 870-PT to bind the non-notice partners, you are:

- Agreeing to the partnership item adjustments
- Agreeing that the non-notice partners are subject to any partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items
- Agreeing that the non-notice partners are subject to additional tax and interest resulting from their share of the adjustments to the partnership return
- Waiving the rights of the non-notice partners to participate in any administrative or judicial proceedings affecting the adjustment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts for the tax year in question.

This agreement is binding only if you sign and return Form 870-PT, and we sign on behalf of the Commissioner of the Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code Section 6229(f).

Within one year of that agreement date, all impacted non-notice partners will receive a final report as to what adjustments we made to their individual, partnership, or corporate returns with a total due or refund amount, including penalties and interest (if applicable).

Once both parties sign the agreement, non-notice partners can't file a claim to:

- Change the items in question
- Claim a refund or credit based on a readjustment

However, they can file a claim to raise:

- Math errors
- Partner level defenses to partnership level determinations of penalties

**If you don't agree with the adjustments**

As the partnership TMP, if you want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner can file a petition for judicial review.

You can file your petition for readjustment of partnership items with one of the following courts:

- United States Tax Court
- United States Court of Federal Claims
- District Court of the United States, in the district of the partnership's principal place of business



DOCUMENT SERVICE
Doc 2020-42341
Page: 46 of 52

A petition the TMP files in the first 90 days precludes all other actions and covers all partners still in the proceeding. If the TMP doesn't file a petition by the 90th day from the date we mailed the FPAA, any partner entitled to receive this letter, or any 5 percent group, can petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. Five percent groups must file the petition after the 90th day, but on or before the 150th day from the date we mailed the FPAA to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed. All partners still subject to the partnership proceeding will be parties to the petition that is not dismissed. Petitions filed with the United States Tax Court must be mailed to:

United States Tax Court
400 Second Street, NW
Washington, DC 20217

When you mail the petition, you must attach a copy of this letter to the petition. The timeframe for filing a petition with the court is fixed by law, and the court can't consider your case if your petition is late.

**If you do nothing**

If neither you, as the TMP, nor any partner file a petition for readjustment in any of the courts listed in this letter, the FPAA becomes final, and we will bill all partners for any additional tax plus interest they may owe under the FPAA. Once final, the treatment of the partnership items of the partnership under the FPAA can't be contested in any refund claim or suit.

You may want to contact a tax advisor to discuss this matter.

If you have questions, you can contact the person listed at the top of this letter. If you write, enclose a copy of this letter and include your telephone number and the most convenient time for us to call if we need additional information.

Thank you for your cooperation.

Sincerely,

*Sheila B. Korth*

Sheila B. Korth
Program Manager, SAA-Technical Services, Legacy

Enclosures:
Schedule of Adjustments
Form 870-PT

cc: Hale E. Sheppard



DOCUMENT SERVICE
Doc 2020-42341
Page: 47 of 52

| Form **870-PT** (Rev. 4-2012) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and zip code:<br><br>TAX MATTERS PARTNER OF<br>HANCOCK COUNTY LAND ACQUISITIONS LLC<br>210 E 2ND AVE STE 105<br>ROME GA 30161-1712 305 | Name of Partnership:<br>HANCOCK COUNTY LAND ACQUISITIONS<br><br>EIN: [redacted]<br><br>Name of Tax Matters Partner: | Tax Year(s) Ended:<br>201612 |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |



DOCUMENT SERVICE
Doc 2020-42341
Page: 48 of 52

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust. If the trustee is signing this agreement on behalf of the trust and all beneficiaries, a Form 56 must be signed by the trustee. If an individual beneficiary is signing the agreement to bind themselves to the agreement, no Form 56 is needed.

6. If the partner is an LLC, the agreement should be signed by the manager of the LLC or other authority as authorized by State law. The signature line should show: [Name of LLC], by [Name of Manager], Followed by the title [Manager].

7. For a partner who is a subsidiary corporation in a consolidated group:

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a).

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

8. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

9. If the Tax Matters Partner signs this offer, please include the title with the signature.

10. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

    - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

    - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.



taxnotes
DOCUMENT SERVICE

Department of the Treasury — Internal Revenue Service

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: Hancock County Land AcquisitionsLLC EIN: [redacted] | TAX YEAR(S) ENDED 12/31/2016 | | |
|---|---|---|---|
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. Other deductions | 1,712,242.00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| **TOTAL ADJUSTMENTS TO ORDINARY INCOME** | 1,712,242.00 | | |
| **OTHER ADJUSTMENTS** | | | |
| A. Charitable contributions 50 percent | | | |
| (1) ADJUSTMENT | 180,177,000.00 | | |
| (2) AS REPORTED | 180,177,000.00 | | |
| (3) CORRECTED | 0.00 | | |
| B. Other deductions | | | |
| (1) ADJUSTMENT | 4,416,251.00 | | |
| (2) AS REPORTED | 4,416,251.00 | | |
| (3) CORRECTED | 0.00 | | |

**REMARKS:This form only reflects Schedule K items adjusted by this report. Penalties under IRC §6662 apply as a partnership level determination. Since accuracy penalties cannot be stacked, the following order applies:**

1. Gross Valuation Misstatement 40% IRC 6662(h) or alternatively IRC 6662(e) Substantial Valuation Misstatement 20%
2. Reportable Transaction Penalty 20% IRC 6662A
3. Substantial Understatement of Income Tax 20% IRC 6662(b)(2)
4. Negligence and Disregard of Rules and Regulations 20% IRC 6662(b)(1)


DOCUMENT SERVICE
Doc 2020-42341
Page: 50 of 52

## Form 870-PT, Other Adjustments (Continued)

Page 2 of 2

| NAME OF PARTNERSHIP: Hancock County Land AcquisitionsLLC<br>EIN: [redacted] | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| | 12/31/2016 | | |
| C. Appraisal fees: Sch k1 13 W: Details of Sch K line 13d | | | |
| (1) ADJUSTMENT | 38,698.00 | | |
| (2) AS REPORTED | 38,698.00 | | |
| (3) CORRECTED | 0.00 | | |
| D. Legal & professional fees: Sch k1 13 W: Details of Sch K line 13d | | | |
| (1) ADJUSTMENT | 1,877,553.00 | | |
| (2) AS REPORTED | 1,877,553.00 | | |
| (3) CORRECTED | 0.00 | | |
| E. Management fees: Sch k1 13 W: Details of Sch K line 13d | | | |
| (1) ADJUSTMENT | 2,500,000.00 | | |
| (2) AS REPORTED | 2,500,000.00 | | |
| (3) CORRECTED | 0.00 | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |


DOCUMENT SERVICE
Doc 2020-42341
Page: 51 of 52

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer<br>HANCOCK COUNTY LAND ACQUISITIONS | | Tax Identification Number<br>[redacted] | Year/Period ended<br>201612 |

You have not established that HANCOCK COUNTY LAND ACQUISITIONS LLC made a noncash charitable contribution during the tax year ended December 31, 2016. To the extent you are able to establish that a noncash charitable contribution has been made, you failed to establish that it satisfied all the requirements of I.R.C. § 170 and the corresponding Treasury Regulations for deducting a noncash charitable contribution. Accordingly, the charitable contribution claimed on HANCOCK COUNTY LAND ACQUISITIONS LLC Return of Partnership Income (Form 1065) is reduced by $180,177,000 for the tax year ended December 31, 2016.

It is determined that the underpayments of tax resulting from the adjustment of partnership items of $180,177,000 are attributable to a gross valuation misstatement. It is therefore determined that a 40% penalty shall be imposed on the underpayments of tax resulting from the gross valuation misstatement as provided by I.R.C. § 6662(h).

Other Deductions, Tax Return Page 1, Ln 20
You have not substantiated the $1,712,242 deduction claimed by HANCOCK COUNTY LAND ACQUISITIONS LLC for Other Expenses as ordinary and necessary in the conduct of a trade or business as required under I.R.C. §162. Therefore, the $1,712,242 deduction is disallowed.

Other Deductions, Tax Return Schedule K, Ln 13(d)
You have not substantiated the $4,416,251 deduction claimed by HANCOCK COUNTY LAND ACQUISITIONS LLC for Other Expenses as ordinary and necessary in the conduct of a trade or business as required under I.R.C. §162. Therefore, the $4,416,251 deduction is disallowed.

It is further determined that the adjustments to partnership items are attributable to a listed transaction under I.R.C. § 6707A(c), specifically a transaction described in Notice 2017-10. These adjustments result in a reportable transaction understatement. If the I.R.C. § 6662(h) penalty is found not to apply to any portion of the understatement, then a 20% penalty under I.R.C. § 6662A applies to that amount.

It is further determined that any underpayments of tax from the adjustments of partnership items are attributable to (1) negligence or disregard of rules or regulations, (2) substantial understatements of income tax, and (3) substantial valuation misstatements. Therefore, if the I.R.C. § 6662(h) penalty and I.R.C. § 6662A penalty are found not to apply to any portion of the misstatement or understatement, there shall be imposed in the alternative a 20% penalty on the underpayments of tax as a result of I.R.C. § 6662(c), (d), and (e).

taxnotes
DOCUMENT SERVICE
Doc 2020-42341
Page: 52 of 52

**Internal Revenue Service**
**Small Business and Self-Employed**

**Department of the Treasury**
955 S SPRINGFIELD AVENUE
SPRINGFIELD, NJ 07081

Date: JUL 23 2020

Hale E. Sheppard
191 Peachtree Street, 46th Floor
Atlanta, GA 30303

Taxpayer Name:
HANCOCK COUNTY LAND ACQUISITIONS

Taxpayer Identification Number:
[redacted]

Form Number:
1065 and consequential adjustments

Year(s):
201612

Person to Contact/ID Number:
Dennis J Serwick 1000209351

Contact Telephone Number:
973-921-4196

Contact Fax Number:
855-753-8251

Dear Hale E. Sheppard

We are sending the enclosed material under the provisions of your power of attorney or other authorization we have on file. For your convenience, we have listed the name of the taxpayer to whom this material relates in the heading above.

If you have any questions, please call the contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

*Sheila B. Korth*

Sheila B. Korth
Program Manager, SAA-Technical Services, Legacy

Enclosures:
☒ Letter(s)
☐ Report(s)
☐ Copy of Determination Letter
☐ Other