IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HANCOCK COUNTY LAND                 :
ACQUISITIONS, LLC, *et al.*,        :
                                    :
      Plaintiffs,               :
                                    :
v.                                  :      CIVIL ACTION NO.
                                    :
UNITED STATES OF AMERICA, *et*      :      1:20-cv-3096-AT
*al.*,                              :
                                    :
      Defendants.               :
                                    :

## <u>ORDER</u>

Plaintiff Hancock County Land Acquisitions, LLC ("Hancock") and its Tax Matters Partner Southeastern Argive Investments, LLC ("Argive") and *its* Tax Matters Partner Representative Bryan Kelley ("Kelley") (collectively, "Plaintiffs") bring this suit against Defendants under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*., and ask the Court to provide declaratory and injunctive relief related to the Internal Revenue Service's ("IRS") examination and treatment of Hancock's 2016 partnership tax return. Defendants the United States of America, the IRS, IRS Manager Catherine C. Brooks, and IRS Agent Pamela Stafford (collectively, "the Government" or "Defendants") filed the instant Motion to Dismiss [Doc. 22], asserting that Plaintiffs' claim should be dismissed for lack of subject matter jurisdiction and alternatively for failure to state a claim. For the reasons that follow, Defendants' Motion [Doc. 22] is **GRANTED**.

## I.  Factual Background

Hancock is a Mississippi LLC that in 2016 donated a conservation easement on its property in Mississippi. (Amended Complaint ("Compl."), Doc. 19 ¶ 32.) In reporting this donation on its 2016 partnership tax return,[1] Hancock claimed a total charitable contribution deduction of $180,177,000 for the conservation easement and $1,712,242 and $4,416,251 for other related deductions. (Tax Court Petition, Doc. 22-2 ¶¶ en, eo, eq, at 22.)[2] Plaintiff Argive is a Georgia LLC that owns 97% of the membership units of Hancock and was designated as Hancock's Tax Matters Partner. (Compl. ¶ 16.) Plaintiff Kelley is an individual who is designated as the Tax Matters Partner Representative for Argive. (*Id.* ¶ 17.) A Tax Matters Partner is designated by the partnership or LLC to represent the partnership or LLC before the IRS in all tax matters for a specific year.[3] In July of 2018, the IRS opened an examination into Hancock's 2016 partnership tax return and specifically the charitable contribution deduction for the conservation easement. (*Id.* ¶ 33.) Under the IRS Code, the IRS had until September 15, 2020 to assess any tax related to Hancock's 2016 return. (*Id.* ¶ 34.)

---

[1] Because Hancock did not make the election to be taxed as a corporation, Hancock is taxed as a partnership under the IRS Code. (Compl. ¶ 15.)

[2] Defendants have attached to their Motion Plaintiffs' Petition in Tax Court and the Final Partnership Administrative Adjustment ("FPAA"), referenced in the Amended Complaint.  (Doc. 22-2.) Plaintiffs have not challenged the authenticity of these documents.  The Court may consider these documents on Defendants' Motion to Dismiss without converting the motion to a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

[3] *See*, Tax Equity and Fiscal Responsibility Act ("TEFRA"), 96 Stat. 648, codified as amended at 26 U.S.C. §§ 6221-6232; *see also IRS Plain Language Summary Tax Matters Partner for Limited Liability Companies*, Oct. 30, 1995 https://www.irs.gov/pub/irs-regs/td3492pl.txt (last visited June 25, 2021).

In May 2019, the IRS, through Agent Stafford, requested that Hancock's Tax Matters Partner, Argive, consent to an extension of the statute of limitations on assessment through September 30, 2021 to allow the IRS more time to develop and review facts related to Hancock's donation of the conservation easement. (*Id.* ¶ 35.) Argive did not agree to the extension outright; rather, it offered to extend the statutory period for assessment *if* the extension were *solely* for the purpose of allowing the case to be reviewed by the IRS Appeals Office and *not* for further factfinding. (*Id.* ¶ 37.) The Appeals Office generally functions as a settlement arm of the IRS.[4]

The IRS did not agree to these terms and continued its factfinding. (Compl. ¶ 38.) In April 2020, Plaintiffs proposed the same offer again by sending a letter to Defendants with the signed IRS Form 872-P, a form that allows for an extension of the statute of limitations, because Plaintiffs were informed that access to the Appeals Office was only available if a taxpayer has at least 20 months left before the statute of limitations runs. (*Id.* ¶ 42.) The letter noted that Plaintiffs were taking "proactive steps" to agree to an extension of the assessment period until

---

[4] The IRS has traditionally operated an Office of Appeals headed by a Chief of Appeals. This Office of Appeals attempts to resolve administrative determinations without the need for litigation and by using alternative dispute resolution methods such as arbitration or mediation. H.R. REP. 116-39, 29.  In July of 2019, the Taxpayer First Act ("TPA") was signed into law. Pub. L. No. 116-25, 133 Stat. 981 (2019). The TPA established an Independent Office of Appeals. TFA § 1001, 133 Stat. at 983, codified at 26 U.S.C. § 7803(e). The legislative history of the TPA explains that the establishment of the new Independent Office of Appeals was intended to "codify the role of an independent administrative appeals function within the IRS and provide new guidelines for procedures that the IRS is to follow in the new office." H.R. REP. 116-39, 29. However, the Independent Office of Appeals is "intended to perform functions similar to those" of the current Office of Appeals. *Id.* at 30.

September 30, 2021 so that Hancock could "file a Protest Letter and address matters with the Appeals Office, before the IRS issues a notice of Final Partnership Administrative Adjustment ("FPAA") and forces Tax Court litigation." (*Id.*) An FPAA is similar to a statutory notice of deficiency except that it shows only the determined treatment of partnership items rather than a tax deficiency. *See* IRS Manual Transmittal, Apr. 19, 2016 https://www.irs.gov/irm/part8/irm_08-019-012.[5] Once an FPAA notice is issued, a partnership may challenge the adjustment through active litigation in Tax Court, district court, or the Court of Federal Claims. *See* 26 U.S.C. § 6234(a). After the notice of the FPAA is mailed, the IRS must wait 90 days to assess an imputed underpayment. *Id.* § 6232(b)(1). If the Tax Matters Partner challenges the FPAA in court, the IRS may not make an assessment of an imputed underpayment until after the decision of the Tax Court, district court, or Court of Federal Claims has become final. *Id.* § 6232(b)(2).

On April 29, 2020 Defendants informed Plaintiffs that they had issued a summary report of the IRS' examination of Hancock, proposing adjustments to Hancock's tax return, and further explained that the IRS planned to finish processing the case and then issue the FPAA notice based on the report's proposed

---

[5] In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 648 (codified as amended at 26 U.S.C. §§ 6221-6232), in part to address problems related to deficiency proceedings for partnership-related tax matters. *United States v. Woods*, 571 U.S. 31, 38 (2013). Under TEFRA, partnership-related tax matters are addressed in two stages. First, the IRS initiates proceedings to adjust the partnership items by issuing an FPAA, notifying the partners of any adjustments. *Id.* at 39. The partners may seek judicial review in Tax Court, district court, or the Court of Federal Claims. *Id.* Then, once the adjustments become final, the IRS may undertake further proceedings to make "computational adjustments" in the tax liability of individuals partners. *Id.*

adjustments. (Compl. ¶ 50.) In line with this direction, on July 23, 2020 the IRS issued the FPAA to Hancock's Tax Matters Partner, Argive. (FPAA, Doc. 22-2 at 36-52.) Two days later, Hancock filed suit in this Court asking the Court to enjoin the issuance of the FPAA, apparently unaware that the FPAA had already been issued. (Doc. 1.)

The only Plaintiff named in the initial complaint was Hancock. Asserting two claims, one under the APA and one for "Mandamus Act," Hancock argued that it has a statutory right to review by the Appeals Office and that Defendants' refusal to send Hancock's case to the Appeals Office and refusal to extend the statute of limitations period were abuses of discretion. (*Id.* ¶¶ 65, 67.) For relief, Hancock sought (1) a declaratory judgment that it has a statutory right to independent review by the Appeals Office, as well as injunctive relief (2) compelling Defendants to sign Form 872-P (extending the statute of limitations so that their case would still be in the window of time during which it could be sent to the Appeals Office), (3) ordering Defendants to provide Hancock access to the Appeals Office, and (4) temporarily enjoining Defendants from issuing the FPAA until after Hancock was provided review by the Appeals Office. (*Id.* at 29-30.) As noted, the FPAA had actually been issued two days prior, apparently unbeknownst to Hancock. (FPAA, Doc. 22-2 at 36-52.)

Shortly thereafter, Defendants filed a motion to dismiss (Doc. 15) and Hancock filed the Amended Complaint (Doc. 19). In the initial motion to dismiss, Defendants argued that Hancock lacked standing because the partnership whose

return is under exam is not a party to the exam and has no right to participate; only the Tax Matters Partner has standing. (Doc. 15 at 6-9.) Argive and Kelly were added as Plaintiffs in the Amended Complaint.[6]

The Amended Complaint also drops the second count for mandamus relief and includes only a single count under the APA. The requested relief, however, remains the same. Plaintiffs still request (1) declaratory judgment that it has a statutory right to independent review by the Appeals Office and (2) injunctive relief compelling Defendants to sign Form 872-P, (3) injunctive relief compelling Defendants to provide Hancock review by the Appeals Office, and (4) injunctive relief temporarily enjoining Defendants from issuing the FPAA until after review by the Appeals Office. (Compl. at 29-30.)

In addition to filing this suit, Plaintiffs filed a Petition for Readjustment of the FPAA in the United States Tax Court in October 2020. (Tax Court Petition, Doc. 22-2). This Petition asks the Tax Court (1) for a readjustment of the partnership items set out in the FPAA that was issued on July 23, 2020, and (2) to find that Hancock's 2016 return was accurate as filed or determine that Hancock *undervalued* the conservation easement. (*Id.* at 34.) Now before the Court is Defendants renewed Motion to Dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Doc. 22.]

---

[6] Defendants reiterate in the current motion to dismiss that Hancock does not have standing to challenge a lack of access to appeals or other procedures related to the examination of its 2016 tax return, but acknowledge that Argive does have standing to bring such a challenge. (Mot. at 10 n.4.)

6

## II.    Legal Standard

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  When addressing facial challenges, the Court takes the complaint's allegations as true and assesses whether such facts sufficiently allege a basis for subject matter jurisdiction.  *Id.*; *Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1358 (N.D. Ga. 2010).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, at 679.  Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570.

## III.    Discussion

Defendants first propound a series of jurisdictional arguments for dismissal. Defendants argue that there is no subject matter jurisdiction because: (1) this

action was mooted by the issuance of the FPAA and the ensuing Tax Court Petition; (2) the Anti-Injunction Act, 26 U.S.C. § 7421(a), which bars any "suit for the purpose of restraining the assessment or collection of any tax," forecloses Plaintiffs' suit; (3) the Declaratory Judgment Act, 28 U.S.C. § 2201, does not confer jurisdiction because it removes federal tax matters from its ambit; and (4) the APA's waiver of sovereign immunity does not apply because the challenged actions were discretionary and not final agency actions. In addition, Defendants argue that the Amended Complaint should be dismissed for failure to state a claim because Plaintiffs do not have a substantive right to review by the Appeals Office.

As the application of these jurisdictional defenses varies depending on the challenged agency action and the relief requested, the Court addresses these arguments, and Plaintiffs' responses, through the lens of the relief sought.

### A. Plaintiffs' request that the Court temporarily enjoin the issuance of the FPAA until Plaintiffs have been afforded independent review by the Appeals Office

This request and aspect of the case is moot. "When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000) (citing *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.,* 162 F.3d 627, 629 (11th Cir.1998) (citing *Pac. Ins. Co. v. General Dev. Corp.,* 28 F.3d 1093, 1096 (11th Cir.1994)). Once such an event occurs, the case "no longer presents a live case or controversy" and must be dismissed.

*Ethridge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993).  Here, the Court cannot enjoin the IRS from issuing the FPAA that was already issued on July 23, 2020, and thus cannot provide Plaintiffs' requested relief.

Though Plaintiffs argue in their response that the Court has the authority to, in essence, compel the IRS to rescind the FPAA (Pl. Resp., Doc. 24 at 16), the Amended Complaint does not ask for such relief.[7]  Moreover, even if it did, the Court could not compel the IRS to rescind the FPAA because such an order would certainly run afoul of the Anti-Injunction Act, 26 U.S.C. § 7421(a), which "bars any 'suit for the purpose of restraining the assessment or collection of any tax.'" *CIC Servs., LLC v. Internal Revenue Service*, 141 S. Ct. 1582, 1593 (2021) (noting that the Act bars pre-enforcement review and prohibits a taxpayer from bringing preemptive suit to foreclose tax liability); *see also*, *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir. 1981), *modified on other grounds*, 646 F.2d 223 (5th Cir. 1981) (explaining that the Anti-Injunction Act also bars claims that seek to restrain IRS "activities which are intended to or may culminate in the assessment or collection of taxes"). The issuance of an FPAA is a necessary step that occurs before the IRS may make an assessment of taxes on partnership items; the IRS cannot make such an assessment until after an FPAA has been issued, and

---

[7] Plaintiffs argue that the Court has jurisdiction to rescind the FPAA or render its issuance invalid under *Romano-Murphy v. Commissioner*, 816 F.3d 708 (11th Cir. 2016). (Pl. Resp. at 13, 16.) *Romano-Murphy* involved a completely different issue (an assessment related to a trust fund) arising under a different statutory provision, 26 U.S.C. § 6672(b), which *specifically allows* a taxpayer to file a timely protest of a proposed assessment and requires that the IRS make a final administrative determination on the protest before any assessment. *Id.* at 721. Plaintiffs have not cited any comparable language in the operative provision here. *Romano-Murphy* is inapposite.

after any challenge has been addressed by the Tax Court, district court, or Court of Federal Claims. 26 U.S.C. § 6232(b). To interfere with the issuance of the FPAA would therefore be to restrain the IRS' activities intended to culminate in the assessment of a tax.[8] Accordingly, the Declaratory Judgment Act, 28 U.S.C. § 2201, which excludes federal tax matters from its remedial scheme, does not confer jurisdiction over this requested relief. "[T]he prohibition on entering declaratory judgment regarding federal taxes 'is at least as broad as the prohibition of the Anti-Injunction Act . . . .'" *Bufkin v. U.S.*, 522 F. App'x 530, 533 (11th Cir. 2013) (citing *Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1362 n.6 (11th Cir. 2003)).

## B. Plaintiffs' request that the Court compel Defendants to sign the IRS Form 872-P, extending the statute of limitations for assessment

The deadline for the IRS to assess a tax on Hancock related to its 2016 return was September 15, 2020. (Compl. ¶ 34.) While Plaintiffs originally declined the IRS' request to extend this limitations period to September 30, 2021, they later sought to *force* the IRS to agree to an extension so that Hancock's return could go before the Appeals Office. As alleged, the IRS informed Plaintiffs that, to be sent to the Appeals Office, a case must have 20 months remaining on the statute of limitations when it is closed by the Examination Division of the IRS. (*Id.* ¶ 38.)

---

[8] Plaintiffs also argue that this action falls within the very narrow judicial exception to the Anti-Injunction Act, set out in *Enochs v. Williams Packing & Navigation Co*., 370 U.S. 1, 7 (1962). (Pl. Resp. at 21-22.) This exception does not apply here because it is by no means clear that the Government cannot prevail under any circumstances and also because another remedy at law exists in connection with Plaintiffs' challenge to the FPAA, specifically through the Tax Court.

When Plaintiffs completed the form for the extension and stated in a letter that they were doing so to address matters with the Appeals Office before the issuance of the FPAA, Defendants refused to countersign the form. (*Id.* ¶¶ 42, 47.) When Defendants issued the FPAA, the statute of limitations was suspended pursuant to 26 U.S.C. § 6229(d), until the decision of the Tax Court becomes final and for one year thereafter.

Defendants argue *inter alia* that this challenged action — the failure to countersign the Form 872-P — is not subject to judicial review under the APA and therefore the Court lacks jurisdiction. (Mot. 11-14.) The Court agrees.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Absent a waiver of sovereign immunity, the Court lacks subject matter jurisdiction to adjudicate claims against the United States and its agencies. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Here, Plaintiffs' sole claim is brought under the APA.

The APA's sovereign immunity waiver, 5 U.S.C. § 702, provides in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]

5 U.S.C. § 702. However, district courts lack jurisdiction over administrative action where agency action is committed to agency discretion by law. 5. U.S.C. § 701(a). In addition, "federal jurisdiction is similarly lacking where the administrative action in question is not 'final' within the meaning of 5 U.S.C. § 704." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). Section 704 provides that "final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. To be considered "final," the agency action must (1) mark the consummation of the agency's decisionmaking process, and must not be "of a merely tentative or interlocutory nature;" and (2) be one by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Here, the IRS' decision not to sign the Form 872-P, and thereby decline to extend the statute of limitations, is not a final agency action within the meaning § 704, as it was a "preliminary, procedural, or intermediate" step leading up to the issuance of the FPAA and did not in any manner alter Plaintiffs' rights or obligations. The limitations period for the IRS to assess a tax after a return is filed is three years, 26 U.S.C. § 6229(a), and the IRS' decision did not alter that requirement. In addition, the Court finds that the decision not to extend the limitations period was discretionary. Plaintiffs have pointed to no requirement that the IRS must agree to an extension and in fact do not respond to Defendants'

arguments that this action was not a final agency action or that it was discretionary. (Pl. Resp. at 18-19.)

Additionally, this request to force the IRS to extend the statute of limitations — and thus prolong assessment of a tax — also constitutes an attempt to interfere with activities that are intended to culminate in the assessment of a tax and thus federal jurisdiction is precluded under the Anti-Injunction Act, 26 U.S.C. § 7421(a); *see also*, *CIC Services*, 141 S. Ct. at 1593. Consequently, there is also no jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, as detailed above. *See Mobile Republican Assembly*, 353 F.3d at n.6.

## C. Plaintiffs' request that the Court compel Defendants to provide Plaintiffs with review by the Appeals Office before the issuance of the FPAA under 26 U.S.C. § 7803(e)

Plaintiffs argue that, prior to the issuance of the FPAA (the deficiency), they had a statutory right to the independent review of Hancock's case by the Appeals Office under the 2019 Taxpayer First Act, Pub. L. No. 116-25, 133 Stat. 981 (2019), the relevant portion of which is codified at 26 U.S.C. § 7803(e). (Pl. Resp. at 10-11.) As noted *supra* at n.4, the Taxpayer First Act established an Independent Office of Appeals, "intended to perform functions similar to those of the current" Appeals Office. H.R. REP. 116-39, 30. Section 7803(e) states the purpose and duties of the Office, as follows:

> (3) Purposes and duties of Office.—It shall be the function of the Internal Revenue Service Independent Office of Appeals to resolve Federal tax controversies without litigation on a basis which—
>
>> (A) is fair and impartial to both the Government and the taxpayer,

> (B) promotes a consistent application and interpretation of, and voluntary compliance with, the Federal tax laws, and
> (C) enhances public confidence in the integrity and efficiency of the Internal Revenue Service.

§ 7803(e)(3). Following this subsection, the Act provides for the "right of appeal" upon which Plaintiffs rely:

> (4) Right of appeal.—The resolution process described in paragraph (3) shall be *generally* available to all taxpayers.
>
> (5) *Limitations on designation of cases as not eligible for referral to Independent Office of Appeals*.—
>
>> (A) In general.—*If any taxpayer which is in receipt of a notice of deficiency* authorized under section 6212 requests referral to the Internal Revenue Service Independent Office of Appeals and such request is denied, the Commissioner of Internal Revenue shall provide such taxpayer a written notice which—
>>
>>> (i) provides a detailed description of the facts involved, the basis for the decision to deny the request, and a detailed explanation of how the basis of such decision applies to such facts, and
>>> (ii) describes the procedures prescribed under subparagraph (C) for protesting the decision to deny the request.

§ 7803(e)(4)-(5) (emphases added). The legislative history further clarifies that

> Independent Appeals is to resolve tax controversies and review administrative decisions of the IRS in a fair and impartial manner, for the purposes of enhancing public confidence, promoting voluntary compliance, and ensuring consistent application and interpretation of Federal tax laws. Resolution of tax controversies in this manner is *generally* available to all taxpayers, *subject to reasonable exceptions that the Secretary may provide.*

H.R. REP. 116-39, 30-31 (emphasis added).

Upon review, the Court finds that Plaintiffs' request — for access to the Appeals Office before the issuance of the FPAA — is also moot. In the Amended Complaint, Plaintiffs specifically challenge the IRS' denial of their request that

Hancock's case be referred to the Appeals Office *before* the issuance of the FPAA. (Compl. ¶¶ 2, 37, 38, 41, 42, 43, 58.) The Amended Complaint does not allege that Plaintiffs sought and were denied review by the Appeals Office *after* the FPAA was issued. Therefore, the only action Plaintiffs actually challenge is the denial of pre-FPAA access to the Appeals Office. The FPAA was issued on July 23, 2020. (FPAA, Doc. 22-2 at 36-52.) The Court cannot compel the IRS to rescind the FPAA, as to do so would violate the Anti-Injunction Act, as described above. 26 U.S.C. § 7421(a). As the Court cannot provide Plaintiffs the relief sought, this request is moot. *Fla. Ass'n of Rehab. Facilities,* 225 F.3d at 1216–17.[9]

In addition, Plaintiffs have not established a waiver of sovereign immunity in connection with this request for Appeals Office review. As noted above, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *Sherwood*, 312 U.S. at 586. Absent a waiver of sovereign immunity, the Court lacks subject matter jurisdiction to adjudicate claims against the United States and its agencies. *Mitchell*, 463 U.S. at 212. The party bringing the action against the United States or one of its agencies has the burden of showing a waiver of sovereign

---

[9] The Court briefly notes that Plaintiffs' position that they had an absolute right to review by the Appeals Office *before* the FPAA was issued is not supported by the statutory text, which clearly contemplates that a taxpayer will make a request to have their case sent to appeals *after* receiving a notice of deficiency. 26 U.S.C. § 7803(e)(5) ("If any taxpayer *which is in receipt of a notice of deficiency* . . . requests referral to the . . . Office of Appeals and such request is denied, the Commissioner . . . shall provide such taxpayer a written notice . . . .") (emphasis added). Here, as noted numerous times above, Plaintiffs do not allege that they sought to go before the Appeals Office after the FPAA was issued.

immunity. *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002); *Holloman v. Wyatt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied*, 104 S. Ct. 2168 (1984).

Plaintiffs' asserted claim is brought under the APA and Plaintiffs argue that the APA's waiver of sovereign immunity applies. (Pl. Resp. at 18.) As noted *supra*, under the APA, district courts lack jurisdiction over administrative action when agency action is committed to agency discretion by law, 5 U.S.C. § 701(a), or when the administrative action in question is not "final" within the meaning of 5. U.S.C. § 704. *Norton*, 324 F.3d at 1236. To be considered "final," the agency action must both (1) mark the consummation of the agency's decisionmaking process, and not be "of a merely tentative or interlocutory nature;" and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); s*ee also Franklin v. Massachusetts*, 505 U.S. 788, 797 ("The core question [in the finality determination] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."). By contrast, a nonfinal agency action is "one that 'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'" *Norton*, 324 F.3d at 1237 (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

Here, Defendants argue that the IRS' decision not to refer Hancock's case to the Appeals Office is within the discretion of the IRS. (Mot., Doc. 22-1 at 16-18.) Specifically, Defendants contend that the text of 26 U.S.C. § 7803(e) delineates

agency discretion in stating that review by the Appeals Office shall be "generally available" and also in acknowledging that the Commissioner will, under certain circumstances, decline to refer cases to the Appeals Office. (Def. Mot. at 18) (citing 26 U.S.C. § 7803(e)(4)).  Practically speaking, as the Appeals Office operates as the settlement arm of the IRS, Defendants also cite authority for the principle that an agency's decision to settle (or not) is discretionary. *See Garcia v. McCarthy*, 649 F. App'x. 589, 591 (9th Cir. 2016) ("[C]ourts that have had occasion to address the issue have uniformly held that an agency's decision to settle falls under the penumbra of agency inaction that has traditionally been subject to a rebuttable presumption against judicial review.") (collecting cases). Plaintiffs have not responded to this argument and fail to refute that the IRS' decision not to refer the case to the Appeals Office was within the IRS' discretion. (Pl. Resp. at 18-19.)

Defendants separately contend that Plaintiffs fail to establish a waiver of sovereign immunity under the APA because the decision not to refer Hancock's case to the Appeals Office before the issuance of the FPAA was not a final agency action. Defendants take the position that the "consummation of the [IRS'] decisionmaking process" was the issuance of the FPAA and the steps that led to that point were procedural in nature. (Def. Mot. at 19.) Further, according to Defendants, the rights and consequences of Hancock's tax examination were not determined until the issuance of the FPAA. (*Id.*)

Again, Plaintiffs do not respond to this argument and thus fail to meet their burden to establish that the challenged action was a final agency action. Moreover,

the Court agrees with Defendants that the refusal to refer Hancock's case to Appeals before the issuance of the FPAA was interlocutory in nature, not final. The decision "d[id] not itself adversely affect" Plaintiffs and any legal consequences are "contingent on future events." *Norton*, 324 F.3d at 1237.

In a fairly similar case, *Facebook, Inc. v. I.R.S.*, 2018 WL 2215743, *10 (N.D. Cal. May 14, 2018), Facebook was issued a notice of deficiency (similar to an FPAA), which it challenged in Tax Court. After the issuance of the deficiency, Facebook requested that the IRS transfer its case to the Appeals Office, and the IRS denied this request without detailed explanation. *Id*. Facebook sued in district court, arguing that it had a right to take its case to the Appeals Office. The *Facebook* Court determined that the IRS' decision not to refer Facebook's case to the Appeals Office was not a final action under the APA because it was not an action by which rights or obligations had been determined or from which legal consequences flowed, and also because Facebook had challenged the deficiency finding in Tax Court. *Id*. at 18.[10] Although *Facebook* addressed a challenge under the 2015 Protecting Americans from Tax Hikes Act of 2015 ("PATH Act"), Pub. L. No. 114-113, 129 Stat. 2242 (2015), and not the 2019 Taxpayer First Act, 26 U.S.C. § 7803(e), *Facebook*'s reasoning applies squarely to Plaintiffs' challenge here.[11]

---

[10] Indeed, here, the IRS' denial of Plaintiffs' request is even less "final," as Plaintiffs sought access to the Appeals Office *before* the issuance of a deficiency. Plaintiffs' request raises the question of what decision Plaintiffs sought to have "appealed" to the Appeals Office because at that time there was no decision.

[11] The *Facebook* decision was issued before the passage of the Taxpayer First Act. In that case, Facebook based its assertion that it had a right to appeal on the "Taxpayer Bill of Rights" included

Consequently, because Plaintiffs have not refuted the IRS' arguments the that decision not to refer Hancock's case to the Appeals Office was (1) within the agency's discretion and (2) not a final agency action, they have not established that the APA's waiver of sovereign immunity applies.

Plaintiffs also fail to establish a waiver of sovereign immunity through the Declaratory Judgment Act, 28 U.S.C. § 2201, which excludes federal tax matters from its ambit. The Parties agree that the Declaratory Judgment Act is interpreted consistently with the Anti-Injunction Act. *Mobile Republican Assembly*, 353 F.3d at n.6 (11th Cir. 2003) ("Because the federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti-Injunction Act, our holding also forecloses the appellees from seeking declaratory relief."). As noted throughout, the Anti-Injunction Act bars any "suit for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). The Act bars pre-enforcement review, *CIC Services,* 141 S. Ct. at 1593, and bars claims that seek to restrain IRS activities intended to culminate in the assessment of a tax, *Kemlon Prods.,* 638 F.2d at 1320.

---

in the Protecting Americans from Tax Hikes Act of 2015 ("PATH Act"), Pub. L .No. 114-113, 129 Stat. 2242 (2015), relevant portion codified at 26 U.S.C. § 7803(a)(3). The provision at issue identified a "**right to appeal a decision** of the Internal Revenue Service and be heard." *Id.* § 7803(a)(E). In a thorough analysis, the *Facebook* Court determined the PATH Act did not grant new enforceable rights but instead imposed an obligation on the Commissioner to ensure that IRS employees act in accordance with preexisting taxpayer rights. 2018 WL 2215743, at *13. Plaintiffs here rely heavily on the 2019 TFA's language identifying a "right to appeal." (Pl. Resp. at 10-11.) But as articulated in the *Facebook* decision, the inclusion of the word "right" cannot be read out of context to confer new enforceable and absolute rights. Plaintiffs do not mention or address this *Facebook* decision.

Here, the crux of Plaintiffs' Complaint and their arguments in briefing acknowledge that the goal of requesting that the IRS to refer Hancock's case to the Appeals Office was to prevent or mitigate the effects of the issuance of the FPAA (the deficiency). *See e.g*., Compl. ¶ 5 ("By depriving Plaintiffs of their statutorily mandated right to a hearing with the Appeals Office now, the Defendants will be able to immediately assess a tax . . . .")); *see also* (Pl. Resp. at 23) (arguing that any tax resulting from the FPAA is invalid and unsustainable). Accordingly, Plaintiffs' request for review by the Appeals Office, either to prevent the issuance of the FPAA or to challenge its issuance after the fact, is an attempt to restrain "activities which are intended to or may culminate in the assessment or collection of taxes," and therefore implicates the Anti-Injunction Act. *Kemlon Prods*., 638 F.2d at 1320 (5th Cir. 1981). Because the Anti-Injunction Act and the Declaratory Judgment Act are coterminous, this action is outside the jurisdiction conferred by the Declaratory Judgment Act. *Mobile Republican Assembly,* 363 F.3d at n.6. Plaintiffs have failed to establish the Court's jurisdiction over this requested relief, as well as this action as a whole.

## IV.   Conclusion

Plaintiffs' Amended Complaint is due to be dismissed for lack of federal subject matter jurisdiction. The action primarily requests pre-FPAA relief, which is moot and the Court cannot now grant because the FPAA has already been issued. Further, Plaintiffs' requests for injunctive relief implicate the Anti-Injunction Act, 26 U.S.C. § 7421(a), because they ask the Court to restrain activities intended to

culminate in the issuance of an assessment, which can only occur after the IRS issues the FPAA and any challenge to the FPAA is addressed by the Tax Court. As the Declaratory Judgment Act's prohibition on entering declaratory judgment regarding federal taxes is at least as broad as the Anti-Injunction Act, it also does not confer jurisdiction. In addition, the APA does not provide jurisdiction over the challenged actions because those actions are discretionary and not final. Plaintiffs, of course, have an alternate remedy here, one they are already pursuing—relief in Tax Court. As the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), Defendants Motion to Dismiss [Doc. 22] is **GRANTED**. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 7th day of July 2021.

**Honorable Amy Totenberg**
**United States District Judge**